SIXTY–SEVEN PROPERTIES, Appellant,

v.

CUTSINGER ELECTRICAL CONTRACTORS, INC., Appellee.

No. 1047.

Court of Civil Appeals of Texas, Corpus Christi.

April 22, 1976.

Rehearing Denied May 13, 1976.

William Key Wilde, Bracewell & Patterson, Houston, for appellant.

Robert Hayden Burns, Butler, Binion, Rice, Cook & Knapp, Houston, for appellee.

## OPINION

NYE, Chief Justice.

This is an action based on breach of contract, quantum meruit and the lien statutes for recovery by a subcontractor against a property owner and general contractor for labor and materials furnished and work performed. Trial was before the court without the aid of a jury. After hearing evidence, the trial court entered judgment in the subcontractor's favor against the owners and general contractor for the sum of $23,332.17, plus attorney's fees of $6,000.00 and foreclosure of its lien on certain properties. Only the owner perfected its appeal to this Court.

The facts of this case are relatively undisputed and are as follows: On October 7, 1968, the defendant Green Tree Constructors, Inc. (hereinafter referred to as Green Tree) as general contractor, entered into a written contract with the defendant Sixty-Seven Properties (hereinafter referred to as Properties) as owner, for the construction of an apartment project to be located in Harris County, Texas. The written contract between Green Tree and Properties called for the payment of the sum of $590,-929.00. There was no completion date set out in the original contract, but only that the work shall be commenced with the execution of the contract and completed without interruption.

On or about February 7, 1969, the plaintiff, Cutsinger Electrical Contractors, Inc. (hereinafter referred to as Cutsinger), entered into a subcontract with the defendant general contractor Green Tree. Cutsinger was to furnish all labor and materials and perform all electrical work per plans and specifications on the project which would include the installation of all light fixtures, exhaust fans, the electric range and oven combinations, range hoods, and hook up all

dishwashers and disposals. No completion date was set out in the subcontract. For such labor, material, and extras, the defendant general contractor Green Tree agreed to pay the sum of $43,877.25. Cutsinger began work on the project December 30, 1968.

By letter dated April 15, 1969, Green Tree notified Cutsinger that it was distressed by the alleged lack of progress Cutsinger had been able to accomplish and that Cutsinger was holding up the progress of other trades. Thereafter, by telegram on June 20, 1969, Green Tree again advised Cutsinger that unless its work was brought up to schedule that it would terminate the contract in accordance with its alleged terms. At this time, Green Tree had paid to plaintiff the sum of $14,535.00 under the subcontract leaving a balance due under the subcontract of $25,878.94. On July 14, 1969, Green Tree terminated the subcontract between it and Cutsinger. Green Tree then employed another subcontractor to complete the work.

On September 23, 1969, Cutsinger notified the owner (Properties) by letter of its claim against Green Tree for the unpaid balance due of $25,878.94 for furnished materials and labor to Green Tree up to and including July 11, 1969. In the letter Cutsinger notified Properties that if the bill remained unpaid, they may be personally liable and their property subject to a lien unless such amount is withheld from the original contractor for payment of this statement or unless the bill is otherwise settled. Cutsinger also enclosed two copies of a subcontractor's lien affidavit filed with the County Clerk of Harris County to secure the payment of the debt for $25,878.94. On September 24, 1969, Cutsinger filed for record its subcontractor's lien affidavit asserting its claim against Green Tree and Properties for the unpaid labor and materials furnished by Cutsinger. Properties refused to pay Cutsinger anything.

Cutsinger then brought suit against Green Tree (general contractor) and Properties (owners) alleging that Green Tree had wrongfully and without justification terminated the subcontract and refused to permit Cutsinger from proceeding further and that because of said termination, plaintiff Cutsinger was damaged in the sum of $25,878.94. Cutsinger alleged that because of its filing of its lien, the owner Properties became jointly and severally liable, along with Green Tree for the damages sued for.

The defendants answered alleging that plaintiff had failed to perform the electrical wiring promptly and efficiently and at a speed that would not cause delay in the progress of the project and that because of such failure it became necessary for defendant, Green Tree, to employ another electrical contractor to rework and repair that portion of the work already done by plaintiff at a cost of $27,541.20 plus additional expenses of $15,080.00. Defendants filed a cross action against Cutsinger alleging that he had failed to perform the electrical work in accordance with the plans and specifications promptly and efficiently and it, therefore, became necessary to employ another subcontractor at a cost of $27,541.00 and with additional expenses of $15,080.00 incurred as a result of plaintiff's failure to promptly complete the job.

The trial was before the court without the aid of a jury. The trial court after hearing evidence entered judgment that: 1) plaintiff Cutsinger recover from defendants Green Tree Constructors, Inc. and Sixty-Seven Properties the sum of $23,332.17 with interest at the rate of 6% per annum from August 10, 1967; 2) that plaintiff Cutsinger recover from defendant Green Tree Constructors, Inc. reasonable attorney's fees in the amount of $6,000.00; 3) that plaintiff Cutsinger has a valid lien upon the tract of land upon which the project was located and was entitled to judgment foreclosing its lien against the project; and finally 4) that cross plaintiffs Green Tree and Sixty-Seven Properties take nothing in its suit against Cutsinger. From such judgment, defendant Properties has appealed to this Court. Appellant makes no complaint of the trial court's finding of wrongful termination or of its findings of fact.

The trial court found that: 1) Green Tree subcontracted the electrical work on the

project to Cutsinger; 2) the written subcontract between Cutsinger and Green Tree called for the payment to Cutsinger of the sum of $38,000.00; 3) Cutsinger's work on the project was terminated by Green Tree on July 14, 1969; 4) labor and materials for which Cutsinger has not been paid were furnished by Cutsinger to Green Tree and Properties; 5) the reasonable value of the labor and materials for which Cutsinger has not been paid was in Houston, Harris County, Texas, in 1969, $23,332.17; 6) Green Tree and Properties received and accepted the benefit of the labor and materials for which Cutsinger has not been paid; 7) by means of a letter dated September 23, 1969, and sent by certified mail, return receipt requested, Cutsinger notified Mr. R. Fred Beeler, President of Green Tree and a partner in Properties, of its claim against Green Tree and Properties for the unpaid labor and materials; 8) on September 24, 1969, Cutsinger filed for record in the office of the County Clerk of Harris County, Texas, its subcontractor's lien affidavit asserting its claim against Green Tree and Properties for unpaid labor and materials furnished by Cutsinger; 9) Properties paid Green Tree sums in excess of $216,983.00 after it received Cutsinger's notice of its claim against Green Tree and Properties.

█ The appellant Properties brings forward only two points of error on appeal. It first asserts that the trial court erred in holding that Cutsinger was entitled to recover in quantum meruit from Properties and second that Cutsinger had a valid lien and was entitled to judgment foreclosing that lien because plaintiff's recovery was based on quantum meruit. Appellant more specifically asserts that when recovery is based upon quantum meruit, there can be no foreclosure of a lien on land. Appellee, on the other hand, asserts that while a recovery under quantum meruit may preclude a contractual lien, such does not invalidate a statutory lien. We agree with the appellee.

The appellee Cutsinger by counterpoints contends that its recovery against Properties, although authorized under the theory of quantum meruit, is expressly authorized by statute (Article 5463, Tex.Rev.Civ.Stat. Ann.1961) and the trial court was correct in holding that it was entitled to foreclose its statutory mechanic's and materialman's lien against the owner, Properties. The appellant, Properties, does not raise any points of error or objection to a recovery on this basis.

█ It is a well settled rule of law in this State that an appellate court will affirm the judgment of a trial court on any legal theory of law applicable to the case that has support in the evidence, regardless of whether the trial court gives the correct legal reason for the judgment it enters, or whether it gives any reason at all. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73 (1939); *Custom Leasing Inc. v. Texas Bank and Trust Company of Dallas*, 516 S.W.2d 138 (Tex.Sup.1974); *Godde v. Wood*, 509 S.W.2d 435 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n. r. e.). The pleadings, the evidence and the court's findings of fact support the judgment here rendered and entered by the trial court.

Article 5463 provides in part as follows: ". . . The owner shall in no case be required to pay, nor his property be liable for, any money, other than that required to be retained by him under the provisions of Article 5469 hereof, that he may have paid to the contractor before he is authorized under this Article to retain the money. *If the notices prescribed in Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453 and the claim or any part thereof is reduced to final judgment, the owner shall be required to pay, and his property shall be liable for, any money that he may have paid to the contractor after he is authorized to retain such money by virtue of this Article, as well as any money he is required to retain by the provision of Article 5469 hereof.*" (Emphasis supplied.)

Article 5469 cited above requires an owner to retain ten percent of the contract price

for a period of thirty days after the work is completed for the protection of laborers and materialmen "whenever work is done whereby a lien or liens may be claimed under Article 5452." See *General Air Conditioning Company v. Third Ward Church of Christ*, 426 S.W.2d 541 (Tex.Sup.1968). Article 5469 further provides as follows:

". . . All persons who shall send notices in the time and manner required by this Act and shall file affidavits claiming a lien not later than thirty (30) days after the work is completed shall have a lien upon the fund so retained by the owner, his agent, trustee, or receiver; . . . If the owner, his agent, trustee, or receiver refuses or fails to comply with the provisions of this Article, then all claimants complying with the provisions of this Act shall share ratably among themselves, with preference to artisans and mechanics as above specified, liens at least to the extent of the aforesaid fund of ten percent (10%) which should have been retained, as against the house, building, structure, fixtures, or improvement and all of its properties, and on the lot or lots of land necessarily connected therewith, to secure payment of such liens."

The foregoing statutes (Articles 5469 and 5463) provide that when an owner (Sixty-Seven Properties) fails to retain the ten percent required by Article 5469, the claimants who have complied with the provisions of Article 5453 are entitled to recover against the owner "at least to the extent of the aforesaid fund of ten percent (10%) which should have been retained."

With respect to the requirements of Article 5453, the record as we have stated conclusively shows that Cutsinger's contract was terminated on July 14, 1969. On September 23, 1969, Cutsinger notified Properties in accordance with Article 5453 of its claim for a debt incurred by Green Tree in the amount of $25,878.94 as a result of Cutsinger having furnished materials and labor to Green Tree up to and including July 11, 1969. In such notice, Cutsinger informed Properties "That if this bill remains unpaid, you may become personally liable and your property subject to a lien unless you withhold funds from the original contract for payment of this statement, or unless this bill is otherwise settled," along with enclosing two copies of Cutsinger's lien affidavit to be filed with the County Clerk of Harris County, Texas. The lien affidavit was thereafter filed on September 24, 1969, perfecting the lien.

After Properties received notice of the claim and lien, Properties made payments to Green Tree in the amount of $216,983.00. This amount was far in excess of the amount claimed as due by Cutsinger. Properties made the final payment to the general contractor, Green Tree, on June 18, 1970, without having made any payment to Cutsinger in satisfaction of such alleged debt. Cutsinger's certified letter and lien affidavit notified Properties of its claim within the time and in the manner prescribed by Article 5453. The lien claim and affidavit met the requirements for form and substance contained in Article 5455 and such was filed with the county clerk as required by Article 5453.

Although Article 5469 requires a claimant to send notices and file his affidavit within thirty days in order to secure a lien *against the fund* to be retained by the owner, the act does not require the filing within thirty days in order to secure the lien on the owner's property as provided by Article 5469 or to obtain recovery against the owner as provided by Article 5463. See *General Air Conditioning Company v. Third Ward Church of Christ*, supra. Under these circumstances, Cutsinger was entitled to a recovery and a lien against the Sixty-Seven Properties' property to the extent of the ten percent fund that Sixty-Seven Properties was required to retain. *General Air Conditioning Company v. Third Ward Church of Christ*, supra; *W & W Floor Covering Company v. Project Acceptance Company*, 412 S.W.2d 379 (Tex.Civ.App.—Austin 1967, no writ); *Hunt Developers, Inc. v. Western Steel Company*, 409 S.W.2d 443 (Tex.Civ.App.—Corpus Christi 1966, no writ).

Our Supreme Court has held that the thirty day period for claiming liens con-

tained in Article 5469 is not applicable when the owner fails or refuses to retain the ten percent fund because Article 5469 grants a lien against the owner's property to "all claimants complying with the provisions of this Act". Article 5463 authorizes recovery from the owner of the amount that should have been retained "if the notices prescribed by Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453." *General Air Conditioning Company v. Third Ward Church of Christ,* supra. See also *W & W Floor Covering Company v. Project Acceptance Company,* supra.

■ Therefore, since Cutsinger fixed and secured its statutory lien under the provisions of Article 5453, it was entitled to a lien on Sixty-Seven Properties and to a recovery and foreclosure of the lien on Sixty-Seven Properties' property by virtue of the provisions of Articles 5463 and 5469 to the extent of the ten percent of the contract price that Sixty-Seven Properties was required to retain. Since Cutsinger's claimed lien is less than ten percent ($59,-092.90), Cutsinger is entitled to full recovery from Sixty-Seven Properties.

The judgment of the trial court is AFFIRMED.